UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CERNATA MORSE | * | JURY TRIAL DEMANDED |
| 20829 Adams Mill Place | * | |
| Ashburn, Virginia 20147 | * | Civ. Action No. 17-cv-1881 |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | |
| | * | |
| JAMES N. MATTIS, | * | |
| Secretary, | * | |
| United States Department of Defense, | * | |
| 1000 Defense Pentagon | * | |
| Washington, DC 20301 | * | |
| | * | |
| Defendant. | * | |

## COMPLAINT

Plaintiff, Cernata Morse, by and through her undersigned counsel, complains of the Defendant as follows:

### JURISDICTION AND VENUE

1. This Court has federal question jurisdiction and venue is proper because Plaintiff was formerly employed in Washington, D.C. by the Defendant, and less than 90 days have passed since the plaintiff received the decision from the U.S. Equal Employment Opportunity Commission Office of Federal Operations dated June 15, 2017 but received on June 20, 2017.

### PARTIES

2. Plaintiff Cernata Morse is currently residing in Ashburn, Virginia.

3. On information and belief, Defendant, James N. Mattis, Secretary, U.S. Department of Defense, is named in his official capacity as Secretary of the Agency that employed Plaintiff within the U.S. Government.

## FACTS

### Procedural Background

4. Plaintiff filed an EEOC complaint on January 27, 2010 alleging discrimination based on race (African American), color (light/fair skin), age (48), sex (female) and physical disability (hip cartilage loss).

5. A hearing was held regarding said complaint on May 13th and 14th, 2014.

6. A decision was issued on or around March 31st, 2016, finding no disparate treatment or hostile work environment on the bases of Plaintiff's race, color, sex, age or disability.

7. An Order of Judgment was entered in favor of the Agency on or around March 31, 2016.

8. Plaintiff timely filed an appeal with the U.S. Equal Employment Opportunity Commission (US EEOC) Office of Federal Operations on or around June 10, 2016.

9. A decision was issued by the US EEOC on June 15, 2017th, affirming the US EEOC Judge's decision. Plaintiff received said decision on or around June 20, 2017.

10. Plaintiff has timely filed this complaint within 90-days of receiving the appellate decision.

11. This action is filed under Title VII of the Civil Rights Act of 1964, as amended, and the Rehabilitation Act.

### Background

12. Ms. Morse is a Black female of African-American descent.

13. Ms. Morse was hired by the United States Department of Defense, Defense Intelligence Agency (the "Agency"), on October 1, 2007, as an Equal Employment Specialist (Program Manager) to manage the Agency's Special Emphasis Programs.

14. She was hired under an excepted appointment with a two-year probationary period, which would have resulted in her position becoming permanent October 1, 2009.

15. The Agency terminated Ms. Morse's employment effective September 25, 2009.

16. During her employment with the Agency, Ms. Morse's first-line supervisors were Noemi Pizzaro-Hyman (Hispanic female, born April 1958), Patricia Beldon (African American-Female), Constance A. Morrow (Hispanic/Northern European female born December 1949, and Scott Lanum (African American male, born February 1962). Ms. Morse's second line supervisor was Nancy Scott (Caucasian female, born February 1954).

17. When Morse was hired in October 2007, she reported directly to Noemi Pizzaro-Hyman.

18. Prior to departing her position in January 2008, Ms. Pizarro-Hyman was unable to conduct an evaluation of Ms. Morse's performance. Rather, Ms. Morrow, conducted her performance evaluation, even though Ms. Morrow had not had regular interactions with Ms. Morse during the period of time related to the evaluation. As a result, Ms. Morrow gave Ms. Morse an evaluation rating of 17, wherein Ms. Pizarro-Hyman indicated she would have given Ms. Morse an 18 or 19.

19. At the same time, Ms. Morrow conducted the evaluation of Ms. Morse's coworker, Monshi Ramdass, a Guyanese male with no disabilities for whom Ms. Pizarro-Hyman was also supposed to provide the evaluation. Ms. Morrow scored Mr. Ramdass a 23.

20. Ms. Morrow also provided Mr. Ramdass with the Knowledge, Skills and Ability answers for a Division Chief Vacancy, and did not provide Ms. Morse with the same. This provided Mr. Ramdass with an advantage over Ms. Morse.

21. Shortly after Ms. Morse complained about Ms. Morrow rating her performance instead of Ms. Pizarro-Hyman, Ms. Morse saw notification that she was going to be placed into a lower position, working underneath an individual who was her equal. After voicing her concerns regarding the same, Ms. Morse was not ultimately placed in the lower position,

22. In the latter part of 2008, Ms. Morse applied for flexible work schedule to accommodate family-care responsibilities. Specifically, Ms. Morse requested that her arrival time be permitted to be later than between 7 – 8:30 am. Ms. Morse's request was not immediately approved or denied. Rather, her supervisor, Mr. Lanum took time to monitor Ms. Morse's attendance habits before making a determination. Ultimately, Ms. Morse's request was denied because during the time her application for flexible work time was pending, and she was on occasion tardy, her then supervisor Mr. Lanum determined that she simply needed to stop being tardy.

23. During that same time, Mr. Lanum and other division chiefs approved the flexible work schedule of other employees promptly. Specifically, Mika Cross's schedule was approved right away.

24. In May 2009, Mr. Lanum counseled Ms. Morse by allegedly providing her with a Statement of Counseling for allegedly failing to cooperate with Mika Cross in submitting information to her in a timely manner. Ms. Morse never received this alleged Statement of Counseling. However, Ms. Morse was not permitted to provide

Ms. Cross with information until it was approved by Mr. Lanum. Thus, any delay in the approval of the revelation of information to Ms. Cross was ultimately caused by Mr. Lanum.

25. During that same period of time, Ms. Cross was often not available for approval, thereby causing a delay in meeting deadlines. However, Mr. Lanum did not provide Ms. Cross with a Statement of Counseling for the same.

26. In July 2009, Ms. Morse was subjected to unfair treatment regarding her inability to assist with the Partnership in Education (PIE) program after her role in that program had been moved from underneath her participation to Ms. Cross' participation. Specifically, Ms. Morse's last involvement with the PIE program was in December 2008. Then, in or around July 23, 2009, the day before Ms. Morse was leaving for holiday, she was asked by Ms. Cross to step back into the program and prepare a read-ahead. Ms. Morse indicated that she could not as she was leaving for vacation and that the PIE program was no longer her responsibility and had not been since December 2008. As a result, Ms. Morse was allegedly given a letter of counseling in or around August 17, 2009 regarding the incident. Ms. Morse never received this alleged letter of counseling.

27. Also, in or around July 2009, Mr. Lanum allegedly gave Ms. Morse a Statement of Counseling regarding an incident that occurred between Ms. Morrow and Mr. Ramdass. Ms. Morse never received this alleged Statement of Counseling. Mr. Ramdass did not receive a Statement of Counseling for the same.

28. In or around August 2009, at a staff meeting where the entire office was present but for Mr. Lanum, Mr. Ramdass was the Acting Deputy. During that meeting, Mr.

   Ramdass stated that all Ms. Morse does "is plan parties." Mr. Ramdass left a sticky note for Ms. Morse apologizing for his comments later the same day.

29. In or around August 2009, Mr. Lanum allegedly issued another Statement of Counseling to Ms. Morse for failure to provide information to Ms. Cross concerning a woman's symposium for the Agency although Ms. Morse had made every attempt possible to obtain said information in a timely manner. Ms. Morse never received this alleged Statement of Counseling.

30. In or around the summer of 2009, Ms. Morse's hip condition worsened, which required her to have surgery. Thus, she applied for FMLA leave.

31. On August 19, 2009, Mr. Lanum signed and approved Ms. Morse's request for FMLA leave from September 1, 2009 through and including October 5, 2009.

32. On August 24, 2009, Mr. Lanum wrote a memorandum requesting the removal of Ms. Morse during her employment trial period.

33. On August 27, 2009, Mr. Lanum electronically signed a Performance Appraisal for Ms. Morse with a successful performance rating, and recommended that she be sustained in her current assignment.

34. Then, the Agency unilaterally placed Ms. Morse on administrative leave effective August 27, 2009, which required Ms. Morse to call in every day by 8:30 am and talk with Mr. Lanum or Ms. Morrow, and failing to do so would result in her being placed in absent without leave status. Because of her health complications Ms. Morse's daughter was forced to call in for her.

35. Ms. Morse had hip replacement surgery on September 1, 2009. During her recovery period in the hospital, she suffered complications resulting in multiple blood transfusions requiring her to stay in the hospital longer, and extreme blood pressure.

36. Ms. Morse's medical condition, cartilage loss between her hip and leg joint, which resulted in an obvious limp and pain when walking, qualified her as an individual with a disability for purposes of the Rehabilitation Act.

37. She was unable to call in to work each day due to her medical complications, and as a result on the third day after her surgery, when she was on the phone with Curt Peterson, he asked whether Ms. Morse had decided to resign or be terminated.

38. Ms. Morse was out of work beginning August 27th, 2009.

39. The last evaluation of her performance, which occurred only days before her medical leave began, had been rated satisfactory and stated "Sustain Current Assignment."

40. While on leave, and inconsistent with a satisfactory rating, the Defendant decided to terminate Plaintiff's employment on September 22, 2009.

41. Similarly situated male co-workers were treated more favorably than Plaintiff and were not terminated from their employment for similar alleged misconduct.

42. Defendant's "Sustain Current Assignment" evaluation, made right before the Defendant decided to terminate Plaintiff's employment, indicates that the decision to terminate was pretext and made to mask unlawful discrimination at work.

43. Plaintiff has sustained damages consisting of emotional distress, pain and suffering, lost wages, and her losses are continuing.

## COUNT 1

44. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-43.

45. Defendant subjected Plaintiff to unlawful discrimination on the basis of her gender by subjecting her to disparate treatment and terminating her employment.

46. By and through its conduct, Defendant subjected Plaintiff to unlawful discrimination based on her race and color in violation of Title VII of the Civil Rights Act of 1964.

## COUNT 2

47. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-43.

48. Defendant subjected Plaintiff to unlawful discrimination on the basis of her disability by terminating her employment because of her disability, exercising her right to request medical leave as an accommodation for her disability, and taking medical leave, thereby violating the Rehabilitation Act.

## JURY DEMAND

Plaintiff demands a trial by jury on each count in this Complaint.

WHEREFORE, Plaintiff demands judgment against Defendant on Counts 1 and 2 and seeks damages in an amount to be determined by a jury for lost wages, lost benefits, $600,000 in compensatory damages for pain and suffering, mental anguish, emotional distress and in addition, Plaintiff demands reasonable attorneys' fees, interest and costs, and such other relief as may be deemed just and fair.

Date:   September 13, 2017			Respectfully submitted,

/s/ Alan Lescht

Alan Lescht, DC Bar # 441691
Rani Rolston, DC Bar # 974052
Alan Lescht & Assoc., PC
1050 17th St., NW, Suite 400
Washington, D.C. 20036
Tel (202) 463-6036
Fax (202) 463-6067
Attorneys for Plaintiff